**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-2744-WJM

LUIS ADAN BELTRAN OROZCO,

     Petitioner,

v.

GEORGE VALDEZ, in his official capacity as
Acting Field Office Director of Enforcement and Removal Operations,
Denver Field Office, Immigration and Customs Enforcement, *et al*.

     Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Before the Court is Petitioner Luis Adan Beltran Orozco's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1.) Respondents George Valdez, in his official capacity as Acting Field Office Director of Enforcement and Removal Operations, Denver Field Office, Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as the Secretary of the Department of Homeland Security ("DHS"); Todd Blanche, in his official capacity as Acting Attorney General of the United States; Juan Baltasar, in his official capacity as Warden of the Denver Contract Detention Facility ("DCDF"); the DHS; and the Executive Office for Immigration Review (collectively, "Respondents" or "the Government") filed a cursory response. (ECF No. 8.) The Court did not order a reply.

For the following reasons, the Petition is granted.

## I.     BACKGROUND[1]

Beltran Orozco is a native and citizen of Mexico.  (ECF No. 1 at ¶ 31.)  He "entered the United States in 2022 with a visa."  (ECF No. 1-6 at 3.)  DHS charged Beltran Orozco as removable as a visa overstay pursuant to 8 U.S.C. § 1227(a)(1)(B).  (ECF No. 1 at ¶ 33.)  He has been in immigration detention since May 12, 2026, and is detained under 8 U.S.C. § 1226(a).  (*Id.* at ¶¶ 2, 24, 34.)  He requested a bond hearing pursuant to 8 C.F.R. §§ 1003.19 and 1236.1.  (*Id.* at ¶ 36.)

On June 5, 2026, an immigration judge ("IJ") held a bond hearing.  (*Id.* at ¶ 6.)  Among other things, the IJ relied on the DHS's proffered evidence of Beltran Orozco's purported criminal history.  (*Id.* at ¶ 36.)  The criminal history consisted of a 2006 traffic offense in El Paso County Court.  (*Id.* at ¶ 38.)  Beltran Orozco "disputed that he committed these offenses and asserted that he was residing and operating a junkyard business in Chihuahua, Mexico at that time."  (*Id.* at ¶ 40.)  He also disputed evidence because his date of birth, height, and weight differed from the corresponding information in the traffic case.  (*Id.* at ¶ 39.)  The IJ afforded limited weight to Beltran Orozco's argument because the travel records he offered as evidence dated back to only 2016, and thus did not establish his presence in Mexico at the time of the traffic offense in 2006.  (ECF No. 1-2 at 1.)

In any case, the charges in the traffic case were dismissed—a fact the IJ failed to mention in her bond decision.  (ECF No. 1 at ¶¶ 37-38, 55, 73; ECF No. 1-4; *see* ECF No. 1-3 at 4 ("5 years later the warrant was canceled due to statute of limitations and

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

the case was dismissed").)  Instead, the IJ noted only that she "afford[ed] limited weight to [Beltran Orozco's] assertion that the criminal history associated with his identity is erroneous."  (ECF No. 1-2 at 1.)  The IJ denied bond, finding that Beltran Orozco "failed to meet his burden of establishing that he is not a flight risk."  (*Id.* at 2.)

Beltran Orozco challenges the legality of his detention and asks the Court to order his immediate release from custody.  (ECF No. 1 at ¶ 14.)  In the alternative, he asks the Court to "order Respondents to provide Petitioner with a constitutionally adequate bond hearing within seven days, at which DHS bears the burden of proving by clear and convincing evidence that Petitioner presents a danger to the community or a flight risk."  (*Id.*)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

### III.    ANALYSIS

Beltran Orozco contends that his detention is unlawful and violates his Fifth Amendment Due Process Rights (Claims One through Four).  (*See generally* ECF No. 1.)  His specific claims are as follows.  Claim One alleges the bond hearing was constitutionally deficient because the IJ relied on materially unreliable facts, namely the criminal history the DHS attributed to Beltran Orozco.  (*See id.* at ¶¶ 50–61.)  Claim Two alleges "the bond decision failed to provide a meaningful and individualized determination of present flight risk based on reliable evidence."  (*Id.* at ¶ 69.)  Claim Three alleges that, in placing the burden on Beltran Orozco "to establish that release on bond was warranted," the IJ "created an unconstitutional risk of erroneous deprivation . . . ."  (*Id.* at ¶¶ 71–72.)  Claim Four alleges the IJ produced a deficient written decision that "denied Petitioner meaningful review and created an unconstitutional risk of erroneous deprivation."  (*Id.* at ¶¶ 79–87.)  The Court agrees on all counts, and also notes that Beltran Orozco has asserted no statutory claim in this action.

### A.    Fifth Amendment Due Process Claims

Beltran Orozco argues that the bond "hearing failed to provide the process required by the Fifth Amendment because the Immigration Judge denied bond based on unreliable, materially disputed, and insufficient factual findings regarding criminal history and flight risk."  (*Id.* at ¶ 6.)  The Court agrees.

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Santillan Quiroz v. Mullin*, --- F.4th ----, 2026 WL 1876709, at *16 (10th Cir. June 30, 2026) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The Tenth Circuit recently explained:

> The Due Process Clause of the Constitution forbids the Government from "depriv[ing]" any "person . . . of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [this] Clause protects." *Zadvydas*, 533 U.S. at 690.  Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so.  *Id.*  If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a "strong special justification."  *Id.*

*Id.*[2]

The Court will "review the nature and structure of the [IJ's decision] for the minimal indicia of due process."  *Mejia v. Baltazar*, 2026 WL 1361514, at *2 (D. Colo. May 15, 2026) (quoting *Lopez v. Paulk*, --- F. Supp. 3d ----, 2026 WL 961948, at *5 (M.D. Ga. Apr. 6, 2026)) (alteration in original).  To be clear, the Court does not act as an appellate court in reviewing the IJ's decision.  *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under [§ 1226(a)] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole . . . .").  But "[w]hether [a petitioner] received the due process to which he was entitled 'is not a matter of discretion' and is subject to judicial review."  *Mejia*, 2026 WL 1361514, at *1 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).  And so, "the Court must independently review the IJ bond proceedings and whether the

---

[2] "To the extent it matters," the Tenth Circuit "assume[d] for the sake of argument that questions about the types of justifications capable of supporting detention sound in substantive due process, while questions about procedures used for proving the satisfaction of a given justification sound in procedural due process.  In that regard, our discussion of constitutional avoidance sounds in substantive due process."  *Id.* at *16 n.12.  The Court makes the same assumption for the purposes of resolving the Petition.

burden of proof [the IJ] used comported with due process." *Lopez*, --- F. Supp. 3d at ----, 2026 WL 961948, at *6.

Under *Mathews v. Eldridge*, courts must consider three factors when evaluating whether a petitioner has made out a procedural due process violation: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Here, all three *Mathews* factors support Beltran Orozco's claims that the IJ violated his procedural due process rights. As to the first factor, Beltran Orozco's continued detention undermines his private interest in his physical freedom. A person's physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Vizguerra-Ramirez*, 2025 WL 3653158, at *13 (same); *Carlon v. Kramer*, 2025 WL 2624386, at *3 (D. Neb. Sept. 11, 2025) (same); *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (same); *Velasco Lopez*, 978 F.3d at 851 (finding, in assessing the first *Mathews* factor, that "[t]he deprivation [petitioner] experienced while incarcerated was, on any calculus, substantial. He was locked up in jail. He could not maintain employment or see his family or friends or others outside normal visiting hours."); *Hamdi*, 542 U.S. at 529 (directing courts, when assessing the first *Mathews* factor, to consider only the petitioner's interests at stake in ongoing detention without consideration of the respondents' justifications for the detention); *Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free

6

from detention "lies at the heart of the liberty that [the Due Process] Clause protects").

Despite the only criminal history linked to Beltran Orozco being a dismissed traffic

offense, the Government is detaining him in a facility that the undersigned has already

found "strongly resemble[s] penal confinement." *Arostegui-Maldonado v. Baltazar*, 794

F. Supp. 3d 926, 940 (D. Colo. 2025). So, the first *Mathews* factor supports Beltran

Orozco's Fifth Amendment claims.

Applying the second *Mathews* factor, the IJ's reliance on the dismissed traffic

case carries the risk of erroneous deprivation. "[T]he traditional due process concern

with accuracy . . . is meant to protect *the individual interest*." *Granillo Chavarria v.*

*Baltazar*, 824 F. Supp. 3d 1170, 1175 (D. Colo. 2026) (emphasis in original) (quoting

*Benham v. Ledbetter*, 785 F.2d 1480, 1487 (11th Cir. 1986)); *see Speiser v. Randall*,

357 U.S. 513, 525–26 (1958) ("Where one party has at stake an interest of transcending

value—as a criminal defendant his liberty—this margin of error is reduced as to him by

the process of placing on the other party the burden of producing a sufficiency of proof

in the first instance . . . .").

The IJ's failure to consider the fact that the traffic offense attributed to Beltran

Orozco was dismissed undercuts the due process concern with accuracy. The IJ

clearly erred in denying bond by predicating her decision on Beltran Orozco's conviction

for the traffic offense, without any reference to the fact that the case was ultimately

dismissed. In addition, Beltran Orozco disputes that he committed the 2006 traffic

offense. But whether he committed the traffic offense is irrelevant here because the

result is the same regardless of whether the traffic offense is attributable to him. In

other words, even if Beltran Orozco committed the traffic offense, the IJ erred in

considering it because it was ultimately dismissed.  Even the DHS's own documentary evidence at the bond hearing showed that the traffic offense was dismissed.  (ECF No. 1-3 at 4.)  So, even if the IJ had ignored Beltran Orozco's evidence and relied solely on the Government's, the record before the IJ supported Beltran Orozco's position.  In sum, the IJ deprived him of his due process rights by failing to consider that Beltran Orozco's purported traffic offense was dismissed.

Furthermore, the IJ should not have placed the burden of proving a negative onto Beltran Orozco.  Beltran Orozco notes, the "burden allocation created an unconstitutional risk of erroneous deprivation because Petitioner was required to prove negatives: that he was not dangerous, that he was not a flight risk, and that disputed criminal history attributed to him did not actually belong to him."  (ECF No. 1 at ¶ 72.) The Court agrees.

Section 1226(a) and its implementing regulations are silent as to who bears the burden of proof at a bond hearing.  *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(d).  But as this Court has said before and as the weight of authority of this District supports, it is the Government's burden to justify a noncitizen's continued detention at a bond hearing. *Garcia Abanil v. Baltazar*, 817 F. Supp. 3d 1148, 1159 (D. Colo. 2026); *see L.G. v. Choate*, 744 F. Supp. 3d 1172, 1186 (D. Colo. 2024) ("[I]n order to continue detaining Petition[er] under § 1226(a), due process requires that the Government is required to establish that continued detention is justified by clear and convincing evidence."); *Arauz v. Baltazar*, 2025 WL 3041840, at *4 n.3 (D. Colo. Oct. 31, 2025); *Espinoza Ruiz v. Baltazar*, 2025 WL 3294762, at *2 (D. Colo. Nov. 26, 2025) (ordering that the Government would carry the burden for bond hearing under 8 U.S.C. § 1226(a)); *Loa*

8

*Caballero v. Baltazar*, 2025 WL 2977650, at *9 (D. Colo. 2025) ("During such [§ 1226(a)] hearing, the Respondents bear the burden of justifying detention."); *Mendoza Gutierrez*, 2025 WL 2962908, at *14 ("[T]he Government shall bear the burden of justifying [detention] by clear and convincing evidence of dangerousness of risk of flight"); *Garcia Cortes v. Noem,* 2025 WL 2652880, at *5 (D. Colo. Sept. 16, 2025) (same); *cf. Santillan Quiroz*, --- F.4th at ----, 2026 WL 1876709, at *16 ("Due process requires that, whenever the Government detains somebody, it must have a good reason for doing so. . . . If the detention is civil and nonpunitive, like the immigration detention here, that reason must rise to the level of a 'strong special justification.' ")

The Court observes that another Judge in this District has found insufficient a bond order that supplied far more reasoning than what the Court currently has before it. In *Arredondo v. Baltazar*, Judge R. Brooke Jackson of this District Court ordered a new bond hearing where the IJ issued a multi-page order but failed to set forth in its ruling "what evidence *presented by respondents* carried their burden of proof to demonstrate that movant is a danger to the community or a flight risk by clear and convincing evidence." *Cervantes Arredondo v. Baltazar*, Civil Action No. 25-cv-3040-RBJ, ECF No. 26 at 1 (emphasis in original). To be sure, the IJ in that case did consider evidence that the judge found to support denying bond. But the *Arredondo* court faulted the IJ for failing to regard which "party proffer[ed] the evidence or the order in which it is considered." (*Id.* at 8–9.) Put simply, if the procedures followed by the IJ in *Arredondo* were deficient—notwithstanding the cited record evidence in support of the decision— surely the procedures followed by the IJ in this case manifestly fail to pass Fifth

Amendment muster.

Indeed, here, "[t]here is no indication . . . that the IJ . . . even placed any burden on the Government at all."  *Mejia*, 2026 WL 1361514, at *2.  As noted above, the IJ imposed upon Beltran Orozco the burden to prove "that he was not dangerous, that he was not a flight risk, and that disputed criminal history attributed to him did not actually belong to him."  (ECF No. 1 at ¶ 72.)  Petitioner argues, and the Court agrees, proving a negative is difficult.  *L.G.*, 744 F. Supp. 3d at 1183.  "[P]roving a negative (especially a lack of danger) can often be more difficult than proving a cause for concern."  *Id.* at 1183–84 (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021).

As to the third *Mathews* factor, it is true that the Government has an interest in ensuring noncitizens appear at future immigration proceedings and in preventing danger to the community.  *Zadvydas*, 533 U.S. at 690.  "It would stand to reason if a noncitizen was neither a flight risk nor dangerous, there would be no government or public interest in detention."  *L.G.*, 744 F. Supp. 3d at 1185.  But as stated above, that the traffic offense was dismissed refutes the IJ's determination that Beltran Orozco failed to establish that he was not a flight risk.

For these reasons, the Court concludes, based on the *Mathews* factors, that Beltran Orozco was not afforded the minimal indicia for due process at his bond hearing before the IJ.

## B.    Remedy

The Government declined to substantively address Beltran Orozco's claims. (ECF No. 8 at 1–2.)  However, it submits that the "appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, provide Petitioner

with a bond hearing under 8 U.S.C. § 1226(a) or else release Petitioner." (*Id.* at 2.)

Another bond hearing will not serve as adequate relief. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2025); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* --- F. Supp. 3d ---, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026) (collecting cases).

Given this reality, the Court will order Beltran Orozco's immediate release.

## IV.   CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 5) is MADE ABSOLUTE and Beltran Orozco's Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Beltran Orozco pursuant to the Second and Third Claims of the Petition. The Court does not reach the merits of the First Claim;

3.    **By no later than this Sunday, July 12, 2026**, Respondents shall

IMMEDIATELY RELEASE Beltran Orozco on his own recognizance, along with all his personal belongings, subject only to the conditions of his pre-existing conditional parole. **No additional conditions of release shall be imposed on Beltran Orozco by Respondents.** Respondents shall further facilitate Beltran Orozco's transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address,

4. Respondents are ENJOINED from re-arresting or re-detaining Beltran Orozco unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Beltran Orozco shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

5. Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Beltran Orozco from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Should Beltran Orozco believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **August 7, 2026**. Respondents shall file a response by no later than **August 28, 2026**, and Beltran Orozco shall file a reply by no later than **September 11, 2026**; and

7. Judgment shall enter in Beltran Orozco's favor and against Respondents on **July 24, 2026,** UNLESS prior thereto the Court is informed that Respondents have

failed to fully and timely comply with the terms of this Order.

Dated this 10th day of July, 2026.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge